IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **NINA K. BEHRENS** ) | |
| **42881 Sandhurst Court** ) | |
| **Ashburn, VA  20148** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | |
| **JOHN F. KERRY** ) | **1:16-cv-1590** |
| **Secretary,** ) | |
| **U.S. Department of State** ) | **August 5, 2016** |
| **2201 C Street, NW** ) | |
| **Washington, DC 20520** ) | |
| ) | **JURY DEMAND** |
| **Defendant** ) | |
| ) | |
| **Serve:** ) | |
| **John F. Kerry, Secretary,** ) | |
| **U.S. Department of State** ) | |
| **2201 C Street, NW** ) | |
| **Washington, DC 20520** ) | |
| ) | |
| **Loretta E. Lynch** ) | |
| **U.S. Attorney General** ) | |
| **950 Pennsylvania Avenue, NW** ) | |
| **Washington, DC 20530** ) | |
| ) | |
| **Civil Process Clerk** ) | |
| **Office of the U.S. Attorney** ) | |
| **District of Columbia** ) | |
| **555 4ᵗʰ Street, NW** ) | |
| **Washington, DC 20530** ) | |

_____

## COMPLAINT

## JURISDICTION

1.       The plaintiff, Nina K. Behrens, brings this action against the defendant, her employer,

John F. Kerry, in his official capacity as the Secretary of the U.S. Department of State for

discriminating against her for opposing and filing EEO complaints about the defendant's

1

discriminatory practices in violation of Section 717 of Title VII of the Civil Rights Act of 1964, as amended, (Title VII) 42 U.S.C. §2000e, *et. seq*. at §2000e-16, incorporating the provisions of Section 704 of Title VII, 42 U.S.C. §§2000e-3.

2.      Jurisdiction of this Court is provided under 42 U.S.C. §§2000e-5 and 16.

3.      Venue in this district is appropriate inasmuch as the plaintiff was employed with the defendant in this district and the acts of discrimination complained of all took place in this district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4.      The plaintiff commences this action more than 180 days after December 21, 2012, the date she filed her formal complaint with the Equal Employment Opportunity Commission (EEOC) and more than 180 days after she filed amendments and additional formal complaints on May 28, 2013, August 9, 2013, March 14, 2014, September 12, 2014, March 14, 2015, September 25, 2015 and October 21, 2015. These complaints and amendments alleged that the defendant discriminated against Ms. Behrens because of her previous EEO activity and objections to such discrimination by: (1) continuously denying her high level work assignments and the ability to perform the full range of her duties; (2) changing her performance plans in an attempt to justify these denials; (3) subjecting her to a hostile work environment; (4) denying her an outstanding rating in her 2013; (5) issuing her an annual performance appraisal in 2013 and a mid-year performance appraisal in 2015 that criticized her for her opposition to discrimination; (6) suspending her for three days on September 10, 2014; (7) issuing her a written warning on March 9, 2015 and (8) suspending her for seven days on October 14, 2015.

5.      These pending complaints and amendments have not resolved.

6.     Thus, prior to this lawsuit, the plaintiff has otherwise exhausted her administrative processing requirements and all administrative remedies.

**PARTIES**

7.     The plaintiff, Ms. Behrens, is an Arab woman of Lebanese national origin. She is a resident of the Commonwealth of Virginia and is a U.S. citizen.

8.     The plaintiff sues the defendant, John F. Kerry, in his official capacity as Secretary of the U.S. Department of State.

9.     Secretary of State Kerry is also responsible for administering the defendant's equal employment opportunity policy and is charged with preventing retaliation within the Department of State.

**STATEMENT OF FACTS**

**Background**

10.    On December 26, 2005 Ms. Behrens began work as a Language Specialist (Arabic) and Diplomatic Interpreter/Translator for the Office of Language Services at the U.S. Department of State ("DOS" or "the defendant"). Ms. Behrens is currently the GS-15 Senior Diplomatic Interpreter with the DOS and has been since July 2012 when she received the position through a competitive promotion process.  Her direct supervisor for the purposes of performing her appraisals is the Director of Language Services, Thomas Hufford. Katherine Yemelyanov, the Deputy Director of Language Services is also in Ms. Behrens' line of supervision.

11.    Though reporting to Hufford, even after her promotion to Senior Interpreter, Ms. Behrens received her assignments from Patricia Arizu the Chief of the Interpreting Division and from Yun Hyang Lee who was Arizu's Deputy Chief. After Ms. Arizu left DOS in November 2013, Lee took over her duties first on a temporary basis and then permanently after June 2014.

12.     Ms. Behrens has two masters' degrees in her field and over 20 years of experience translating and interpreting for both the public and private sectors. Ms. Behrens is a native Arabic speaker and she is also fluent in English, French, and Italian. Prior to working at DOS, Ms. Behrens worked as an Arabic interpreter and translator for private contractor that often provided services to DOS.

13.     As a Diplomatic Interpreter and Senior Diplomatic Interpreter, Ms. Behrens has interpreted at the highest levels of government, providing interpretation services for the President, Vice President, Secretaries of State and other prominent government officials.

14.     Further, Ms. Behrens has received numerous letters and notes of appreciation and commendation from diplomats for whom Ms. Behrens has interpreted and colleagues with whom Ms. Behrens has worked worldwide.

15.     When Ms. Behrens interviewed for her position with the DOS, she took an interpreting test in which she scored higher than any other applicant.

16.     Throughout her first three and a half years of employment with the DOS, and until she voiced opposition to discrimination and retaliation against her, Ms. Behrens received outstanding performance reviews. Although she was marked her down in two categories, even her 2013 review rated her as exceeding expectations overall.

**Ms. Behrens' Prior EEO Activity and Settlement of Prior Cases**

17.     Starting in 2008, DOS officials, including Arizu, began subjecting Ms. Behrens to discrimination on the basis of her gender and race Arabic. Soon thereafter, DOS officials including Ms. Arizu also began retaliating against Ms. Behrens for voicing her opposition to this discrimination and for filing her EEO complaints.

18.     The adverse actions Ms. Behrens alleged that the defendant subjected her to the following adverse actions in these complaints were as follows: (1) a hostile work environment characterized by, but not limited to, derogatory remarks about her Lebanese national origin, Arab race and gender, (2) a denial of an outstanding rating on her 2008 annual performance evaluation; (3) a denial of training opportunities; (4) denial of a promotion to a higher level; and (5) a denial of pay equal to other male interpreters performing work at a similar level, As a result, Ms. Behrens filed several formal EEO complaints between 2009 and 2012.  In February 2011, she filed a federal complaint under the Equal Pay Act in the U.S. Court of Federal Claims.

19.     In April 2012, the parties settled these previous EEO complaints and the complaint at the Federal Court of Claims. Thereafter, the defendant allowed Ms. Behrens to apply for a promotion to Senior Arabic Diplomatic Interpreter, GS-15, through the competitive process. She did so and was promoted to the position with a grade and salary increase, in July 2012. The job description of the Senior Diplomatic Interpreter provides as follows:

> MAJOR DUTIES
>
> 1.      Serves as the principal or sole interpreter for the President, Vice-President, Secretary of State and other senior level US officials on the most complex, sensitive interpreting assignments both domestically and overseas. . .
>
> 2.      Lead interpreting teams at international conferences on political economic, social technical and scientific matters in addition to functioning as a conference interpreter. . .
>
> 3.      Serves as the principal U.S. government linguistic and terminology authority for a major world language in its spoken and written form.

20.     Ms. Behrens was to remain under the supervision of Arizu and Lee for the purposes of receiving her assignments. However Hufford was placed in charge of completing her future evaluations. The defendant excluded Arizu from these settlement discussions and the promotion process.

**Retaliation Subsequent To the Settlement**

**The defendant assigns Ms. Behrens' high level work to contractors and she receives threats when she opposes this retaliation**

21.     Almost immediately after Arizu discovered the settlement and Ms. Behrens' promotion to the Senior Arabic Diplomatic Interpreter Arizu continued with the previous retaliation that she had exhibited before the settlement in the only area of Ms. Behrens' supervision in which she still had authority—that is assignment of duties. Arizu proceeded to deny Ms. Behrens the high level and team leader assignments that were specifically outlined as the major duties of that position. Instead she hired two contractors, Reem Nuseibeh and Gelal el-Nahal, and assigned them most of those high level duties.

22.     When Ms. Behrens voiced her opposition to this retaliation Director Hufford ignored her and let Arizu continue. Deputy Director Yemelyanov even told Ms. Behrens in January 2013 that, unless Ms. Behrens stopped her complaints and opposition to Arizu's retaliation, Ms. Behrens may have to leave her job at DOS.  Yemelyanov also said that Arizu was in charge and could do whatever she (Arizu) wanted no matter what the results of the EEO charges.

23.     In addition to the above evidence that support Ms. Behrens' claims, the defendant's own policies and practices undermine any claim that the defendant had a legitimate reason to deny her the assignments. These policies include: (1) Department of State notices relevant to the Office of Language Services; (2) Presidential Executive Order 13576 of June 13, 2011; (3) Office protocol and past and current practice towards the other staffers as highlighted in the Memorandum for Language Services of December 2012 and in the job description for Senior Diplomatic Arabic Interpreter.

24. The first policy directive that supports the claims is the Memorandum on Language Services of December 2012. The memo states:

Sensitivity and complexity of task:

Tasks with the greatest sensitivity and complexity *should be assigned to the most senior government interpreters* and translators, subject to availability in target languages.

Later the memo provides:

Costs A/OPR/LS managers should consider the monetary and resource cost associated with assigning contract translators and interpreters in lieu of employees. These costs will vary depending on the duration of the individual assignment.

25.     The second is The Presidential Executive Order 13576--Delivering an Efficient, Effective, and Accountable Government which prohibited all the practices Arizu has adopted with regard to her use of contractors in her place. It provides:

   (e)  The Chief Financial Officers (CFOs) at all agencies shall be responsible for achieving defendant cost savings.  This will include each defendant's share of the $2.1 billion in administrative cost savings identified in her Fiscal Year 2012 Budget, and for achieving those   savings as quickly as possible.  *The CFOs are encouraged to realize these cost savings by targeting wasteful practices and by reducing, and identifying alternatives to, discretionary travel, the use of consultants, and other administrative expenses.*  The Federal CFO Council shall provide a monthly report on these efforts to the PMC, with relevant findings and progress reported on performance.

26.     The third are Department of State's notices relevant to the Office of Language Services #2005-03-083 of March 18, 2005 and #2009-05-061 of May 13, 2009. These notices provide that contract support should be used when staff is not available.

27.     Finally there is the job description itself which describes Ms. Behrens as the "team lead" and "the principal or sole interpreter for the President, Vice-President, Secretary of State and other senior level US officials." Since September 2012, the defendant has refused to assign her duties commensurate with those set forth in her job description.

28.     The fact that Ms. Arizu hired and paid two contractors to replace Ms. Behrens when she was available to perform the duties they were given violated the Interpreting Division's own

established policies and practices and her own previous policy and practices for staff interpreters as well as the relevant Executive Order, requiring agencies to reduce the costs of hiring contractors. Under those policies, practices and Executive orders, staff work should not be outsourced unless staff is unavailable.

29.     As a result of these retaliatory actions, Ms. Behrens filed her formal complaint a formal EEO complaint. The complaint alleged as follows:

> In reprisal for her previous EEO activity and opposition to past discrimination and retaliation, the Department of State, through its managing official Patricia Arizu, discriminated against Ms. Behrens when: on September 11, 12, 13, 14, 15, 24, 25, 26, 28, 2012 and continuing through October, November and December 2012 and beyond Arizu denied Ms. Behrens high level interpreting assignments.  The assignments Ms. Behrens should have received were consistent with her job title and description (Senior Arabic Language Interpreter, GS-15), proven abilities and defendant rules as applied to other, similarly-situated interpreters who had not engaged in EEO activities or opposed Arizu's discrimination. In Ms. Behrens' place, Arizu assigned less qualified contractors who also had not engaged in EEO activities or opposed Arizu's discrimination.

30.     On January 18, 2013, the defendant accepted the allegations in this complaint.  In addition, on May 28, 2013, it allowed Ms. Behrens to add to the complaint several more examples of high level assignments the defendant had denied her in reprisal for her previous EEO complaints.

31.     On August 9, 2013 after being subjected to further reprisals, Ms. Behrens filed a request to amend her initial complaint. Because the investigation was completed on the initial complaint and she had already requested an administrative hearing, she filed the following the request with the EEOC Hearings Office. The amendment provided:

> In reprisal for her previous EEO activity and opposition to past discrimination and retaliation, the Department of State, through its managing officials Patricia Arizu and Yun Lee, engaged in a continuing course and practice of discrimination against Ms. Behrens when:
>
> Arizu denied Ms. Behrens high level interpreting assignments.  The assignments Ms. Behrens should have received were consistent with her job title and description (Senior

Arabic Language Interpreter, GS-15), proven abilities and defendant rules as applied to other, similarly-situated interpreters who had not engaged in EEO activities or opposed Arizu's discrimination. In Ms. Behrens' place, Arizu assigned less qualified contractors who also had not engaged in EEO activities or opposed Arizu's discrimination.

**Retaliation continues in denying Ms. Behrens high level assignments and in comments in 2013 appraisal after Nuseibeh hired as a staff interpreter**

32.     In November 2013, Arizu hired Nuseibeh as a GS-14 Arabic Interpreter. The hiring process for interpreters involved rigorous testing procedures under conditions that resemble those that occur at high diplomatic meetings. However, Arizu excluded Ms. Behrens from the hiring and testing process, although as Senior Arabic Diplomatic interpreter, Ms. Behrens was the principal U.S. government linguistic and terminology authority in its spoken and written form for Arabic, a major world language. Instead Arizu allowed the contractor el-Nahal to serve as the tester for Nuseibeh and allowed Nuseibeh to serve as tester for the other applicants who were competing against her.

33.     Arizu's manipulation of the hiring process to favor Nuseibeh violated the defendant's hiring rules and the competitive hiring process.  However, it served the dual purpose of denying Ms. Behrens important duties that coincided with the position while ensuring that Nuseibeh would receive the position.

34.     After hiring Nuseibeh, Arizu, and later Yun Lee, who replaced Arizu after Arizu retired suddenly in January 2014, continued to assign Ms. Nuseibeh the high level assignments that were supposed to be reserved for Ms. Behrens.

35.     After Ms. Behrens continued to voice her opposition to this retaliation, Hufford retaliated against her further. He continued to allow Arizu and later Lee to deny Ms. Behrens high level assignments.

36.     Further, he restricted Ms. Behrens from talking to high officials both within and outside the DOS who were or should have been her clients according to the defendant's policies and her job description. Previously, after investigating Language Services, the DOS' Office of Inspector General (IG) had also recommended more communications between interpreters and principals. Hufford's new policy resulted in less communications.

37.     Hufford's communications restrictions were part of his efforts to isolate Ms. Behrens and to deny her the high level assignments by ensuring that these officials not request Ms. Behrens directly. If those officials did not know she was available, they were more likely to accept the substitute interpreters.

38.     Finally Hufford placed the following negative comments in her 2013 appraisal and lowered her rating in two categories to:

> When the management of the Interpreting Division made assignments that did not conform to Nina's expectations, Nina frequently reacted with accusations of ill intent on the part of the managers for giving away work she considered hers by virtue of her seniority and skill. Her response to my feedback concerning both incidents was to deny any wrong-doing on her part and reiterate her accusations of ill intent on the part of the managers in the Interpreting Division.

Hufford's appraisal also criticized Ms. Behrens for complaining about the "hatred" of the Interpreting Division managers as the reason for "unfair decisions and retaliatory stances" taken against her.

39.  As a result, Ms. Behrens filed a second request to amend her complaint on March 24, 2014. It stated:

> In reprisal for her previous EEO activity and opposition to past discrimination and retaliation, the Department of State, through its managing officials Thomas Hufford Patricia Arizu and Yun Lee, have engaged in a continuing course and practice of discrimination, and/or have now created a hostile work environment, against Ms. Behrens when:

(1) On or about March 6, 2014, Hufford provided her with a final performance appraisal for 2013 that rated her only fully successful, as opposed to exceeds expectations, in two critical categories. The examples Hufford used to justify his rating relied on false information or statements Ms. Behrens made in support of her claims that she was being retaliated against.

(2) Commencing on or about January 31, 2014 and continuing to the present, Hufford has not issued Ms. Behrens a performance plan that allows her to perform her assignments consistent with her job title and description (Senior Arabic Diplomatic Interpreter, GS-15), proven abilities and defendant rules and practices;

(3) From on or about September 11, 2012, and continuing to the present, Hufford, Arizu and Yun Lee have denied Ms. Behrens high level interpreting assignments interpreting for the President, Vice President, Secretary of State and cabinet officials as well as planning the schedules of contract interpreters for various projects, executing reviews and making suggestions on improving client and contractor relations. These assignments were consistent with her job title and description (Senior Arabic Diplomatic Interpreter, GS-15), proven abilities and defendant rules and practices as applied to other, similarly-situated interpreters who had not engaged in EEO activities or opposed discrimination. In Ms. Behrens' place, Hufford, Arizu and Lee assigned a less qualified employee or contractor who also had not engaged in EEO activities or opposed discrimination.

40.    Even though Nuseibeh was a staff interpreter after November 2013, the defendant's decision to allow Nuseibeh to fill assignments that should have gone to Ms. Behrens constituted additional retaliation. As a certified trainer, an Arabic interpreter for seven years with the defendant, and several more outside, and with two masters' degrees and a certification as a trainer of interpreters, Ms. Behrens had far greater knowledge, skills and experience than Nuseibeh who had never interpreted at high levels before joining the defendant and had no specialized advanced degrees in the field.

41.    Nuseibeh also made significant errors on her assignments—many of which took place at the highest levels of diplomacy with heads of state, government and foreign affairs. The defendant continued to ignore these mistakes and continued to offer Nuseibeh high level assignments despite the fact that on many occasions Ms. Behrens brought the errors to the attention of defendant's officials, including Hufford and Yemelyanov.

42.     Further, it was Ms. Behrens, and not Ms. Nuseibeh, who worked under the job description that made her "the principal or sole interpreter for the President, Vice-President, Secretary of State and other senior level US officials." The defendant's own December 2012 directive also required that "tasks with the greatest sensitivity and complexity should be assigned to the most senior government interpreters". In this case, that would be Ms. Behrens, not Ms. Nuseibeh.

43.     The policies and the job description show that there was no legitimate reason for prohibiting Ms. Behrens from performing these assignments while replacing her first with contractors and later with a staff person with less qualifications, less seniority and at a lower rank.

44.     Ms. Behrens sent several emails to Hufford and made many verbal complaints to him pointing this out to him. However, Hufford ignored them or made excuses for Arizu's and Lee's conduct that are not in accord with the facts or the law.

**Ms. Behrens issued a three-day suspension in retaliation for her opposition to discrimination**

45.     Moreover on or about May 1, 2014, Hufford was involved in proposing a three-day suspension for Ms. Behrens allegedly for contacting a lower level official at the National Security Council for the purpose of disclosing errors Ms. Nuseibeh made in an interpretive session involving the President.  The suspension was based on Hufford's restrictive policy prohibiting any contact between Ms. Behrens and high officials both within and outside the DOS who were or should have been be her clients,

46.     The suspension proposal was also based on false allegations and on rules that were applied to Ms. Behrens in a manner different from those other interpreters who had not engaged in EEO activity.

47.    Specification 1 of the charge alleged that Ms. Behrens engaged in improper communications by sending an email to a staff person at the NSC, Andrew Kim. The allegations were that she did not have prior permission to send the email as required by a written policy drafted and implemented by Hufford on March 8, 2013.

48.    Ms. Behrens' communication with Mr. Kim did not violate that policy. The policy requires Ms. Behrens' supervisors' prior permission to communicate with persons outside her line of supervision only if those communications are with principals or senior staff.

49.    Mr. Kim was not an NSC principal or a member of its senior staff. Therefore, Ms. Behrens did not violate Mr. Hufford's policy or prior directives in any way.

50.    Specification 2 alleged that the contents of Ms. Behrens' communication constituted improper personal conduct because Ms. Behrens described numerous errors in Ms. Nuseibeh's interpretation that occurred at a meeting between President Obama and Palestinian President, Mahmoud Abbas on March 17, 2014.

51.    There was no allegation that the errors Ms. Behrens found were not real. Nor did she act unprofessionally or disrespectfully to a colleague by using any language that criticized Ms. Nuseibeh directly in the communication.

52.    In fact, rather than acting improperly, Ms. Behrens was performing a task that she was specifically authorized to perform as a GS-15 Senior Arabic Diplomatic Interpreter as set forth in her position description.  Paragraph 3 of that position description provides that she:

> Serves as the principal U.S. linguistic and terminology authority for a major world language in its spoken and written form. *Provides advice both within and outside the Department on proper language usage*. . .(Emphasis added).

Because her communication with Mr. Kim provided advice outside the Department about proper language usage and substantive errors in interpretation, it fell specifically within this part of her job description.

53.    Further, other interpreters reporting to Ms. Lee and Mr. Hufford who have not engaged in similar EEO activity as Ms. Behrens have sent communications to low level, and perhaps higher level, staff of agencies outside the Department of State without the knowledge or permission of Lee and/or Hufford.

54.    As in Ms. Behrens' case, their job descriptions alone would probably authorize such contact.  These employees did not receive any discipline for this conduct, let alone a proposed suspension. Despite raising all these issues in her reply to the proposed suspension, the defendant issued the suspension on or about September 10, 2014.

**Retaliation continues with more hostile comments, a warning and work restrictions in Ms. Behrens' performance plan**

55.    In addition, despite the fact that Ms. Behrens had complained about being subjected to a hostile work environment because of her EEO activity, Ms. Yemelyanov continued to attack and threaten Ms. Behrens, including as late as September 2014.

56.    With the participation of Yemelyanov, Hufford escalated his retaliation further by issuing Ms. Behrens a letter of warning on March 9, 2015. The warning accused Ms. Behrens of using inappropriate language. The allegations were not true and treated Ms. Behrens differently from others, such as Ms. Yemelyanov who had used more inappropriate language yet were not disciplined as harshly as Ms. Behrens.

57.    Hufford also issued Ms. Behrens a 2015 performance plan that was again inconsistent with her job description as senior diplomatic interpreter and would perpetuate the practice of

delegating to Ms. Behrens' a disproportionate share of lower level assignments as compared to Ms. Nuseibeh and other interpreters who had not engaged in EEO activity.

58.     Hufford continued his retaliatory behavior by issuing Ms. Behrens a mid-year appraisal on September 4, 2015 that had several derogatory comments about her performance that were untrue, directly related to her previous EEO activity and were based on performance standards that were not applied to similarly situated employees who did not engage in EEO activity.

**Ms. Behrens issued a seven-day suspension in retaliation for her opposition to discrimination**

59.     While Ms. Behrens EEO complaints and amendments, including the complaint based on the 3-day suspension, were being investigated, on August 6, 2015 Hufford proposed Ms. Behrens for another suspension, this time for seven days.  The defendant issued the suspension on October 14, 2015. This suspension was also based on facts that were untrue and criteria that treated Ms. Behrens differently from other interpreters who had not engaged in prior EEO activity.

60.     Specification 1 of the charge alleges that Ms. Behrens engaged in improper communications by hitting a "reply all" button on an email she sent to Interpreting Division Chief, Yun Lee. Hitting this button sent the email to certain government officials outside Language Services.

61.     The allegations are that the email presented dissent or concerns on Ms. Behrens' part, that she did not have prior permission to send the email and that these actions violate the written policies drafted and implemented by Hufford in March and April 2013 that Ms. Behrens allegedly violated in the first suspension.

62.     Ms. Behrens' communication did not violate that policy. The policy required Ms. Behrens' supervisors' prior permission to communicate with persons outside her line of

supervision only if communications express dissent or concerns with matters within the department.

63.     Ms. Behrens email to Ms. Lee did not express any dissent or concern. It merely stated the fact that Ms. Behrens had conducted bilateral interpretations for similar meetings for over 21 years.

64.     In addition, Ms. Behrens thanked Ms. Lee for her instructions and indicated that she intended to follow them. The lack of dissent and overall cordial nature of the email showed that Ms. Behrens did not violate Mr. Hufford's policy or prior directives.

65.     Further, other interpreters reporting to Ms. Lee and Mr. Hufford have sent communications to staff of agencies outside the Department of State without the knowledge or permission of Lee and/or Hufford. Like in her case, their job descriptions alone would probably authorize such contact.  These employees did not receive any discipline for this conduct, let alone a proposed suspension.

66.     Specification 2 alleged that Ms. Behrens' acted in an unprofessional and discourteous manner by sending an email to her co-employee, Ms. Nuseibeh, on June 10, 2015. In that specification the offending reference Mr. Hufford cited was Ms. Behrens calling herself Ms. Nuseibeh's "senior colleague", which was nothing more than a true statement.

67.     Ms. Behrens job title was Senior Arabic Diplomatic Interpreter.  Mr. Hufford himself refers to her as the "Senior Diplomatic Interpreter". Further Ms. Behrens had several more years of service as a Department of State employee than did Ms. Nuseibeh. As such, using the term "senior colleague" was not "discourteous and unprofessional behavior" and was not grounds for discipline let alone a seven-day suspension.

68.     Further, even if Mr. Hufford considered that truthful comment to be unprofessional and discourteous, he treated Ms. Behrens much more harshly than Ms. Nuseibeh. Ms. Behrens' email responded to what Ms. Behrens believed were Nuseibeh's unprofessional and discourteous comments. Particularly, Ms. Nuseibeh wrote that Ms. Behrens was not "building rapport" and that Ms. Behrens was attempting to "push her out of the way." There was nothing in Ms. Behrens email that fit that description. She suggested a procedure for them to conduct their interpreting assignment.

69.     Despite the fact that Ms. Nuseibeh's comments to Ms. Behrens were more obviously unprofessional and discourteous than were Ms. Behrens' comments to Nuseibeh, Mr. Hufford chose to suspend Ms. Behrens and did not discipline Ms. Nuseibeh at all. This was inconsistent treatment of Ms. Behrens which does not support her suspension and treated her differently from someone who engaged in similar behavior but who had not filed an EEO complaint or complained about retaliation.

70.     In summary, the discrimination Ms. Behrens has suffered is demonstrated in all or in part by the following: a) the strong motive Arizu, Hufford, Yemelyanov and Lee had for retaliating against Ms. Behrens because they were named as discriminating officials in Ms. Behrens' EEO charges; (b) the proximity in timing between their retaliation, the settlement of Ms. Behrens' previous EEO charges and Equal Pay case and her subsequent opposition to retaliation and subsequent EEO complaints and participation in the EEO process; (c) the fact that Deputy Director Yemelyanov to whom Ms. Behrens complained about retaliation told Ms. Behrens that Arizu could do whatever she wanted no matter what the outcome of the EEO process and that Ms. Behrens' complaints needed to stop or she might have to leave; (d) the fact that Hufford has called Ms. Behrens' opposition to retaliation inappropriate; (e) the fact that no other staff

interpreter in the past or present has had their assignments outsourced to contractors when he or she was available; (f) the fact that none of these staff interpreters had opposed discrimination, filed an EEO charge or participated in the EEO process as Ms. Behrens had; (g) the fact that Ms. Behrens' knowledge, skills and experience are superior to those to whom Ms. Behrens' work was assigned; (h) the fact that these employees and contractors often performed poorly and often did not have the required level of security clearance to perform the assignments; (i) the fact that many of the assignments unnecessarily increased the defendant's costs; (j) the fact that Arizu and Lee did not waive or lower costs, as they did for other staff interpreters, when clients from other agencies requested Ms. Behrens' services, (k) the fact that Hufford, Arizu and Lee prohibited clients from requesting Ms. Behrens' services by name, or even contacting her, when those prohibitions did not apply to other staff interpreters and when the DOS' own IG recommended more communications between interpreters and principals; (l) the fact that, as a senior staff interpreter, GS-15, the work Ms. Behrens was denied was specifically part of her position description; (m) the fact that the practices of outsourcing Ms. Behrens' work have violated the practices and policies that the defendant has followed in the past and is required to continue to follow in the future, including Department of State notices relevant to the Office of Language Services; Presidential Executive Order 13576 of June 13, 2011; office protocol and past and current practice towards the other staffers as highlighted in the Memorandum for Language Services of December 2012; and (n) the fact that other staff and Deputy Director Yemelyanov who had not opposed discrimination or filed EEO complaints had used more inappropriate language directed at Ms. Behrens but not disciplined in the same manner as she.

**CLAIM ONE (RETALIATION FOR OPPOSING DISCRIMINATION AND FILING EEO COMPLAINTS AND PARTICIPATING IN THE EEO PROCESS)**

1.      The plaintiff incorporates by reference paragraphs one through 70 herein.

71.     By the actions described in paragraphs one through 70 in: (1) continuously denying her high level work assignments; (2) changing her performance plans in an attempt to justify these denials; (3) denying her an outstanding rating in her 2013; (4) issuing her an annual performance appraisals in 2013 and a mid-year performance appraisal in 2015 that criticized her for her opposition to discrimination; (5) suspending her for three days on or about September 10, 2014; (6) issuing her a written warning in on March 9, 2015 and (7) suspending her for seven days on or about October 14, 2015 the defendant discriminated against the plaintiff because she opposed the defendant's discrimination against her and filed complaints about that discrimination with the defendant's EEO office and EEOC.

72.     The defendant's actions violated Section 704 of Title VII, 42 U.S.C. §2000e-3 as incorporated into Section 717 of Title VII, 42 U.S.C. §2000e-16.

73.     As a result of the defendant's unlawful conduct, Ms. Behrens has suffered damages in the form of lost pay and benefits and other attendant rights and privileges of her employment.

74.   As a result of the defendant's unlawful conduct, Ms. Behrens has suffered and continues to suffer loss of career opportunities and per diem payments over and above her salary while on assignments.

## CLAIM TWO (CREATING A HOSTILE WORK ENVIRONMENT BASED ON OPPOSITION TO DISCRIMINATION, FILING EEO COMPLAINTS AND PARTICIPATING IN THE EEO PROCESS)

1.     The plaintiff incorporates by reference paragraphs one through 74 herein.

75.   By the actions described in paragraphs one through 74, including making comments and engaging in actions that disparaged Ms. Behrens and consistently treated her differently from her other colleagues because she opposed discrimination, filed EEO complaints and participated in the EEO process and in intensifying those comments and escalating its adverse conduct after Ms.

Behrens continued to oppose this discrimination and file EEO complaints, the defendant engaged in conduct that was severe or pervasive, altered Ms. Behrens' ability to perform her job properly and created a hostile work environment.

75.    The defendant's actions violated Section 704 of Title VII, 42 U.S.C. §2000e-3 as incorporated into Section 717 of Title VII, 42 U.S.C. §2000e-16.

76.    As a result of the defendant's unlawful conduct, Ms. Behrens has suffered damages in the form of lost pay and benefits and other attendant rights and privileges of her employment.

77.    As a result of the defendant's unlawful conduct, Ms. Behrens has suffered and continues to suffer loss of career opportunities and per diem payments over and above her salary while on assignments.

**DEMAND FOR RELIEF**

WHEREFORE, the plaintiff requests that this Court:

1.    Issue a declaratory ruling that the defendant has violated the plaintiff's rights under Section 717 of Title VII, 42 U.S.C.§2000e-16, incorporating Section704 of Title VII, 42 U.S.C.§2000e-3;

2.    Issue an order against the defendant awarding the plaintiff back pay and benefits and restoring to her all other rights, benefits and privileges of her employment;

3.    Issue an order against the defendant to cease and desist from subjecting the plaintiff to retaliation and a hostile work environment, including but not limited to, restoring to her all the duties of the senior interpreter position and allowing her to perform the number of high level work assignments consistent with that position;

4.    Issue an order against the defendant to remove all derogatory and disciplinary information in the plaintiff's personnel file and to upgrade her 2013 performance

appraisal to "Exceeds Expectations" in all categories;

5.      Issue an order against the defendant awarding the plaintiff compensatory damages up to the legal maximum of $300,000.00 for her loss of career opportunities and per diem payments over and above her salary while on assignments;

6.      Issue an order against the defendant awarding the plaintiff costs of prosecuting this action, including reasonable attorney's fees;

7.      Issue an order against all defendant awarding the plaintiff pre- and post- judgment interest; and

8.      Issue an order awarding the plaintiff such other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

The plaintiff hereby demands a trial by jury with regard to all issues to which she is entitled under law.

Respectfully Submitted,
The Plaintiff,
Nina K. Behrens

By:     /s/ Jonathan L. Gould_____
        Jonathan L. Gould
        DC Bar #491052
        Law Office of Jonathan L. Gould
        1730 M Street, NW, Suite 412
        Washington, DC 20036
        Tel. 202-347-3889
        Fax 703-652-7589
        Email: jgould@igc.org

        Attorney for the Plaintiff