UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NINA K. BEHRENS,

    Plaintiff,

    v.

REX W. TILLERSON,[1] Secretary,
United States Department of State,

    Defendant.

Civil Action No. 16-1590 (CKK)

**MEMORANDUM OPINION AND ORDER**
(August 30, 2017)

    This action is brought by Plaintiff Nina K. Behrens pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff is a Senior Diplomatic Interpreter with the Department of State, and principally alleges that she was denied certain high-level interpreting assignments as retaliation for bringing earlier discrimination complaints against her supervisors, which were settled in April 2012. Two counts are alleged against Defendant in the complaint: one for the alleged retaliation, and the other for allegedly creating a hostile work environment, likewise due to the alleged retaliatory conduct. Compl. at 18–20.

    Pending before the Court is Defendant's [9] Motion to Dismiss in Part pursuant to Federal Rule of Civil Procedure 12(b)(6). The government contends that certain claims were not administratively exhausted. At this stage, however, the Court cannot conclude that Plaintiff provided such insufficient notice of these claims during the administrative process that dismissal is warranted on exhaustion grounds. The government further contends that Plaintiff has not plausibly alleged a materially adverse action by Defendant, which is required to make out a Title VII retaliation claim. When all reasonable inferences are drawn in Plaintiff's favor, however, the complaint plausibly alleges that she suffered a diminution of employment responsibilities, and thereby a material adverse action. Whether such inferences are ultimately warranted as a factual matter is to be decided following discovery. Finally, largely on the basis of this same deprivation of employment responsibilities, which Plaintiff alleges was severe and pervasive, the Court finds that Plaintiff has plausibly alleged that she suffered a retaliatory hostile work environment. Accordingly, upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of the pending motion, the Court shall **DENY** the [9] Motion to Dismiss in Part.

---

[1] Automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court's consideration has focused on the following documents:
- Complaint, ECF No. 1 ("Compl.");
- Mem. of P&A in Supp. of Def.'s Mot. to Dismiss in Part, ECF No. 9-1 ("Def.'s Mem.");
- Pl.'s Mem. of P&A in Opp'n to Def.'s Mot. to Dismiss, ECF No. 10 ("Opp'n Mem.");
- Reply in Supp. of Def.'s Mot. to Dismiss in Part, ECF No. 11 ("Reply Mem.").

1

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted).[3] The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## DISCUSSION

### A. Dismissal is Not Appropriate on Exhaustion Grounds

Defendant contends that Plaintiff failed to adequately exhaust two categories of claims: (i) two claims related to a 2013 performance appraisal, *see* Def.'s Mem at 7 (citing Compl. ¶ 71); and (ii) the hostile work environment claim, *see* Def.'s Mem. at 14. The parties' dispute on this issue reduces to the following procedural history.

Plaintiff filed a formal administrative complaint regarding her supervisor's alleged retaliatory conduct on December 21, 2012. Compl. ¶ 4. A number of additional complaints and amendments followed between May 2013 and October 2015. *Id*. One of these requested amendments is at issue here. In particular, on March 24, 2014, Plaintiff requested that the presiding Administrative Judge allow, among other things, the following amendment to her complaint:

> On or about March 6, 2014, Hufford provided [Plaintiff] with a final performance appraisal for 2013 that rated her only fully successful, as opposed to exceeds expectations, in two critical categories. The examples Hufford used to justify his rating relied on false information or statements [Plaintiff] made in support of her claims that she was being retaliated against.

---

[3] For purposes of the pending motion, the Court has reviewed the administrative filings that have been attached to the parties' pleadings. These are either referenced or necessarily relied upon by the complaint, or are official public documents subject to judicial notice, and are consequently subject to the Court's review for purposes of the pending motion. No party has contested this point. *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("A court may take judicial notice of facts contained in public records of other proceedings . . . ." (citing *Covad Communications Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005))).

ECF No. 10-2, at 10. The requested amendment also included an allegation that Plaintiff's supervisors "have now created a hostile work environment." *Id*. On January 20, 2015, the parties filed a joint motion to consolidate, which asked the Administrative Judge to consolidate the complaint with the additional charges made in the March 24, 2014 request to amend, as well as an earlier request to amend filed on August 9, 2013. The parties also asked the Administrative Judge to remand these additional claims for further investigation. *Id*. at 2.

The Administrative Judge issued an order on June 10, 2015, which permitted an amendment of the complaint "comprised of incidents, from July 2014 to March 20, 2015, where [Plaintiff] was denied high level interpreting assignments." ECF No. 9-5, at 2. The June 2015 order is silent on the March 2014 request to amend. Defendant contends that silence indicates that the March 2014 request was denied, and that consequently, Plaintiff has not administratively exhausted claims stemming from the 2013 performance appraisal and the hostile work environment claim. Def.'s Mem. at 8–9. Before turning to the merits of this contention, there is one final step in the paper trail. On August 18, 2015, Plaintiff filed another motion for remand. ECF No. 10-3, at 1. In the brief, Plaintiff noted the ambiguity in the June 2015 order, indicating that "the order seems limited to remanding the claims in the first amendment and did not explicitly authorize the EEO office to investigate the additional claims in the second amendment." *Id*. at 9. The proposed order attached to the motion sought remand of several claims, including the claims related to the 2013 performance appraisal, and again referenced a hostile work environment claim. *Id*. at 4. The fate of the August 2015 motion is not apparent from the record presently before the Court.

"To administratively exhaust [her] . . . claim[s], [Plaintiff] had to timely provide the Department with 'sufficient information to enable the agency to investigate the claims.'" *Coleman v. Duke*, --- F.3d ---, No. 15-5258, 2017 WL 3480705, at *5 (D.C. Cir. Aug. 15, 2017) (citing *Artis v. Bernanke*, 630 F.3d 1031, 1034–1035 (D.C. Cir. 2011)). Under the pertinent administrative regulations, a "complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). The claims at issue are plausibly related to the original administrative complaint as they are, according to Plaintiff, part and parcel of a pattern of retaliatory conduct by Defendant's supervisors.

When an amendment is sought and obtained, the new claim will be deemed administratively exhausted even though informal counseling was not sought with respect to that claim, as would otherwise be required prior to the filing of an administrative complaint. *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (citing 29 C.F.R. § 1614.107(a)(2)). As the above recitation makes clear, it is not apparent from the present record whether Plaintiff's amendment was accepted or not, and this alone creates a fact issue not appropriate for resolution on a motion to dismiss. Furthermore, as to the ultimate question of whether Defendant was put on sufficient notice of the claims, the reasonable inference to draw from the complaint and the administrative record presently before the Court is that it was on notice. Plaintiff filed a request to amend, then a joint motion to amend, and then after the ambiguous order on the motion to amend, Plaintiff filed another motion to remand so that the claims at issue could be investigated. The first of these requests was lodged in March 2014, more than two years before this case was filed in August

3

2016.[4] What ultimately came of the requests is not apparent, but it is certainly plausible that Defendant was put on sufficient notice of the claims. Accordingly, dismissal on administrative exhaustion grounds is not appropriate at this procedural juncture. *See Hampton v. Schafer*, 561 F. Supp. 2d 99, 103 (D.D.C. 2008) ("Because his complaint was then pending with the EEOC, the USDA forwarded the amendment request to the EEOC for consideration. While, as defendant contends, the leave claims were not litigated before the EEOC, defendant agency was indisputably put on notice of plaintiff's allegations."); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 213 (D.D.C. 2013) ("Laughlin raised the issue of her 2008 bonus denial early in the administrative process, and just one week after she found out about it, thus giving the agency ample notice and a fair opportunity to resolve her claim.").

### B. Plaintiff Has Plausibly Alleged a Materially Adverse Action and a Retaliatory Hostile Work Environment

Defendant contends that Plaintiff has failed to state a Title VII retaliation claim because she has not plausibly alleged that she sustained a materially adverse action at the hands of her employer. "[T]o sustain a retaliation claim, the employee need only demonstrate that the employer's challenged action would have been material to a reasonable employee, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination . . . ." *Coleman*, 2017 WL 3480705 at *10 (internal quotation marks and alterations omitted). However, to "be materially adverse, the employer's action must be more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Typically, a materially adverse action in the workplace involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Id*. (internal quotation marks omitted).

A reduction in responsibilities can constitute a materially adverse action. *See Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (finding adverse employment action where plaintiff's "duties dramatically declined in both quantity and quality"); *Czekalski v. Peters*, 475 F.3d 360, 364–65 (D.C. Cir. 2007) (reassignment "with significantly diminished responsibilities" constituted an adverse action); *Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003) ("[W]ithdrawing an employee's supervisory duties constitutes an adverse employment action[.]"); *Saunders v. Mills*, 842 F. Supp. 2d 284, 293 (D.D.C. 2012) ("Because the Court has found that the diminished responsibilities constituted a material change in her employment, the Court also holds that such diminished responsibilities would dissuade a reasonable employee from making or supporting a charge of discrimination."). "Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question. The court may not take that question away from the jury if a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities." *Czekalski*, 475 F.3d at 365 (citation omitted).

However, not all changes in assignments or responsibilities constitute a materially adverse action. For instance, the "D.C. Circuit has held that minor changes in work-related duties or

---

[4] Administrative proceedings were ongoing as of at least April 2016. *See* ECF No. 10-4.

opportunities do not constitute an actionable injury unless they are accompanied by some other adverse change in the terms, conditions or privileges of employment." *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002). Further, in *Jones*, the D.C. Circuit held that although plaintiff received an assignment that "was generally less favorable than other assignments," she did not suffer an adverse employment action because that assignment "was one of the three possible assignments that might arise in the ordinary course of her employment, and therefore there was no material change in the terms, conditions, or privileges of her employment . . . ." *Jones v. D.C. Dep't of Corr.*, 429 F.3d 276, 281 (D.C. Cir. 2005).

Plaintiff alleges that following the settlement of her earlier discrimination complaints against Defendant, in July 2012, she was promoted to Senior Arabic Diplomatic Interpreter. Compl. ¶ 19. One of the "major duties" associated with this position was to "serve as the principal or sole interpreter for the President, Vice-President, Secretary of State and other senior level US officials on the most complex, sensitive interpreting assignments both domestically and overseas . . . ." *Id*. However, Plaintiff alleges that almost immediately after she was promoted, one of her supervisors "proceeded to deny [Plaintiff] the high level and team leader assignments that were specifically outlined as the major duties of that position." *Id*. ¶ 21. Instead, the supervisor "hired two contractors . . . and assigned them most of those high level duties." *Id*. Plaintiff alleges that the practice of assigning her low-level assignment not commensurate with her job description continued for several years. *Id*. ¶ 58 (alleging that a 2015 performance plan "would perpetuate the practice of delegating to [Plaintiff] a disproportionate share of lower level assignments").

Defendant seeks to cast these allegations as nothing more than Plaintiff being dissatisfied with the composition of her workload. *See* Def.'s Mem. at 11; Reply Mem. at 7–8. At the motion to dismiss stage, however, the Court must draw all reasonable inferences in Plaintiff's favor. When that is done, the allegations of the complaint plausibly suggest that Plaintiff, in essence, was relegated to lower-rung responsibilities than what she was entitled to pursuant to the terms of her job description. True, as Defendant points out, the job description does not by its express terms entitle Plaintiff to be the *sole* recipient of high-level assignments. Reply Mem. at 8 (citing Ex. 13).[5] But it does suggest that she is entitled to a certain class of assignments, and the complaint alleges that she was denied access to those assignments as retaliation for her discrimination complaints. This suffices to plausibly allege a materially adverse action. Ultimately, it may be that, as in *Jones*, Plaintiff received a mix of assignments, each of which was within the ambit of her job responsibilities, and that she was merely dissatisfied with the legitimate work allotments made by her supervisors. Which description is more apt, however, must be decided following discovery. *See Mamantov v. Jackson*, 898 F. Supp. 2d 121, 129 (D.D.C. 2012) ("[D]iscovery is necessary before the Court could possibly assess the material adversity of the March 2010 reassignment. The Court must therefore deny the defendant's motion to dismiss the plaintiff's retaliation claim.").

On largely the same basis, Plaintiff has also plausibly alleged that she was subject to a hostile work environment. "The D.C. Circuit has recognized the validity of retaliatory-hostile-work-environment claims." *Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) (citing *Baird*

---

[5] Significantly, the job description states that the "incumbent serves as a Senior Diplomatic Interpreter for the President, [First] Lady, Vice President, Secretary of State, and other government officials at the most senior levels in the U.S. Government . . . ."

5

*v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)). To prevail on such a claim, "a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird*, 662 F.3d at 1250 (internal quotation marks omitted). Plaintiff has plausibly alleged that over the course of several years, her supervisors retaliated against her by consistently denying her access to certain high-level assignments to which she was allegedly entitled. Plaintiff also alleges that she was threatened with termination for complaining of retaliation; that she was unfairly forbidden from speaking with high-level government officials; and that she was unfairly targeted with negative performance reviews and warnings. Compl. ¶¶ 22, 36, 38, 56. On this basis, Plaintiff has plausibly alleged that persistent and severe retaliatory conduct changed the conditions of her employment—that is, she was relegated to low-level assignments—meaning that dismissal of her retaliatory hostile work environment claim is unwarranted. *See, e.g., Dunbar v. Foxx*, --- F. Supp. 3d. ---, No. 13-CV-872 (TSC), 2017 WL 1208391, at *13 (D.D.C. Mar. 31, 2017) (allegations were sufficient to make out a claim of retaliatory hostile work environment due in part to the "reassignment of [plaintiff's] duties to other employees"); *Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010) ("Winston's claim, construed in the light most favorable to him despite its sparse nature, sufficiently alleges facts that could be probative of a discriminatory hostile work environment by incorporating the purportedly discriminatory conduct that Winston experienced, and asserting that the discriminatory conduct constituted a hostile work environment.").

## **CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's [9] Motion to Dismiss in Part is **DENIED**.

**SO ORDERED.**

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge